UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH A. TARONI,<br><br>  Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. 5:16-cv-03520-EJD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 19 |

Plaintiff Joseph A. Taroni ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of a final decision by the Commissioner of the Social Security Administration[1] denying his claim for Social Security Disability ("SSD") benefits. In a Motion for Summary Judgment, Plaintiff seeks an order reversing the decision and awarding benefits, or alternatively, remanding the action to the Commissioner for further administrative proceedings. Dkt. No. 16. The Commissioner opposes Plaintiff's motion and seeks summary judgment affirming the decision denying benefits. Dkt. No. 19.

Because the record reveals the Commissioner's decision is not supported by substantial evidence in several aspects that cannot be classified as harmless, Plaintiff's motion will be granted and the Commissioner's cross-motion will be denied for the reasons explained below.

---

[1] The current acting Commissioner of Social Security, Nancy A. Berryhill, is automatically substituted as defendant in place of her predecessor. Fed. R. Civ. Proc. 25(d).

Case No.: 5:16-cv-03520-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

## I. BACKGROUND

### A. Procedural History

Plaintiff applied for SSD on February 28, 2013, alleging a disability onset of August 23, 2005. Tr., Dkt. No. 11, at 75. Plaintiff's claim was initially denied by the Commissioner on November 12, 2013. Id. at 187. Plaintiff requested reconsideration of that decision, which was denied by the Commissioner on January 21, 2014. Id. at 199-206.

Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which occurred before ALJ Betty Roberts Barbeito on October 8, 2014. Id. at 13-23; 209-214. Plaintiff, represented by counsel, testified on his own behalf. The ALJ also heard testimony from four other witnesses: Dr. Kweli J. Amusa, a doctor of internal medicine; Dr. Julian Kivowitz, a psychiatrist; and Linda M. Ferra, a vocational expert, and Barbara Taroni, Plaintiff's mother. In a written decision dated December 12, 2014, the ALJ ultimately found that Plaintiff was not disabled.

Plaintiff sought administrative review of the ALJ's determination. Id. at 5-9. On April 25, 2016, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner. Id. at 1-3. Plaintiff then commenced this action, and the instant summary judgement motions followed.

### B. Plaintiff's Personal, Vocational and Medical History

According to his testimony before the ALJ, Plaintiff was born on August 23, 1987, and was 27 years old at the time of the hearing. Id. at 33. While in school, he was placed special education classes and graduated from high school. Id. at 34. Plaintiff had been working as a stock clerk at Ace Hardware for the past eight years, and was working 22 hours per week. Id. at 34-35. In 2013, Plaintiff worked 32 hours per week. Id. at 617.

Plaintiff filed for SSD due to cancer, back injury and borderline intellectual functioning. On December 22, 2011, Plaintiff was examined by Dr. Henry S. Chua due to a neck mass. Id. at 522. After ordering tests and a biopsy, Plaintiff was diagnosed with Hodgkin's lymphoma and referred for further treatment with an oncology specialist. Id. at 507, 520, 550. He received

Case No.: 5:16-cv-03520-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2

chemotherapy and radiation therapy, and subsequent PET/CT scans showed no evidence of disease. Id. at 538-40; 640. Plaintiff completed treatment in 2014. Id. at 640.

Plaintiff fell off of a bicycle in June, 2012, and a CT scan in September, 2013, showed a severe compression fracture in part of his spine, and a mild fracture deformity in another part of his spine. Id. at 611-12.

Plaintiff was examined at the direction of the Commissioner by Dr. Sara Hyatt-Boyd, a psychologist, on July 10, 2013. Id. at 600-604. On the WAIS-IV test, Dr. Hyatt-Boyd assessed Plaintiff to have an IQ score of 69, which she placed at the "extremely low range." Id. at 602. She explained that an IQ of 69, "when combined with other factors, may meet the criteria for a diagnosis of Borderline Intellectual Functioning or Mild Mental Retardation," but recommended further assessment for a definitive diagnosis. Id. As for restrictions, Dr. Hyatt-Boyd found Plaintiff had a mild impairment in the ability to understand, carry out and remember simple one- or two-step instructions; a moderate impairment in the abilities to understand, carry out, and remember detailed instructions; and to perform and sustain day-to-day work activities, including issues of attendance and safety; a mild to moderate impairment in the ability to deal with changes, stress, or ambiguous situations; a mild to no impairment in the ability to relate and interact with co-workers and the public; and no impairment in either the ability to accept instructions and interact appropriately with supervisors; or the ability to maintain concentration, attention, persistence, and pace. Id. at 603-604.

Plaintiff was also examined by Dr. Clark Gable on September 26, 2013, at the direction of the Commissioner. Id. at 617-18. Dr. Gable diagnosed Plaintiff with Hodgkin's lymphoma in remission, multiple healing or healed fractures to the spine, and a learning disorder based on a psychological examination. Id. at 618. As a functional capacity assessment, Dr. Gable opined Plaintiff could sit up to eight hours per day with usual breaks, could stand and/walk up to eight hours per day with usual breaks, could lift 25 pounds frequently and 50 pounds occasionally, and had no problem with fine finger and hand movements. Id.

At the hearing before the ALJ, Plaintiff testified he could not do his job full-time because of back problems. Id. at 53. Plaintiff stated he spends his days off resting at home, specifically laying down for three hours. Id. at 55. He does not have problems with sitting or walking, but feels pain in his feet and back after standing for 15 to 30 minutes. Id. He is able to clean his room and do small household repairs. Id. Plaintiff also testified he is able to count change slowly, feels frustrated by expectations and multiple tasks, and asks for direction from a manager two or three times per day. Id. at 53-54. He does not drive or have a drivers' license. Id. at 56-57.

Plaintiff's mother testified that Plaintiff could not live on his own because he is "kind of like a young teenager mentally." Id. at 62. She stated Plaintiff cannot "relate the amount of money he makes to what . . . it costs to live," cannot tell time on an analog clock, and cannot fill out job applications. Id. at 63-65. Plaintiff's mother also testified that Plaintiff would have a difficult time working somewhere other than Ace Hardware, where he was given an "extra chance," because his communication skills are lacking. Id. at 61-63.

## II. LEGAL STANDARD

### A. Standard for Reviewing the ALJ's Decision

Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision. The court's jurisdiction, however, is limited to determining whether the denial of benefits is supported by substantial evidence in the administrative record. Id. A district court may only reverse the decision if it is not supported by substantial evidence or if the decision was based on legal error. Id.; Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

"Substantial evidence" is more than a scintilla, but less than a preponderance. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). This standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." Vertigan, 260 F.3d at 1049 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). A court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). The court must affirm the ALJ's conclusion so long as it is one of

several rational interpretations of the evidence. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). However, the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

"The claimant carries the initial burden of proving a disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (observing that the claimant must satisfy the burden on the first four steps of the evaluative process). If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing the claimant can perform "a significant number of other jobs in the national economy." Thomas, 278 F.3d at 955; Bowen, 482 U.S. at 146 n.5 ("[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy."). "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Thomas, 278 F.3d at 955.

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 416.920. The steps require the following analysis:

(1) The ALJ must first determine whether the claimant is presently engaged in

Case No.: 5:16-cv-03520-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
5

1   substantially gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled;
otherwise the evaluation proceeds to step two.

(2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

(3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

(4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If the claimant cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(f).

(5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. § 416.920(g).

## III. DISCUSSION

The ALJ made the following findings and conclusions on the five steps: (1) for step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 23, 2005; (2) for step two, the ALJ determined Plaintiff had severe impairments, including Hodgkin's lymphoma in remission, healed or healing compression fractures, and a learning disorder, but had no evidence of these conditions prior to 2012; (3) for step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the requirements of the Listing of Impairments; (4) for step four, the ALJ determined that Plaintiff had

the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c),[2] except that he can only occasionally climb ladders, ropes and scaffolding, and only frequently climb stairs and ramps, or balance, stoop, kneel, crouch, or crawl. In addition, the ALJ found Plaintiff's moderate limitation in concentration reduces his capacity to love semi-skilled work, but he can perform his past relevant work as a stock clerk; and (5) for step five, the ALJ determined that Plaintiff is capable of performing past relevant work as a stock clerk, or alternatively, that other jobs exist in significant numbers in the national economy that the claimant can also perform.

In his motion, Plaintiff argues: (1) the ALJ improperly found Plaintiff had past relevant work as a stock clerk; (2) the ALJ erroneously evaluated the opinions of Dr. Kivowitz and Dr. Hyatt-Boyd in the assessment of Plaintiff's residual functional capacity; (3) the ALJ erred by finding Plaintiff did not meet Listing 12.05(C), one of the listed impairments for intellectual disability; and (5) the ALJ erred by finding Plaintiff obtained at least a high school education.

Examining the arguments in sequential order, Plaintiff's arguments are each meritorious.

### A. The Step Three Decision is Not Supported by Substantial Evidence

Plaintiff argues the ALJ erred at Step Three by finding that Plaintiff's intellectual disability did not satisfy Listing 12.05(C). The Commissioner disagrees. The record reveals the ALJ's finding of non-disability under Listing 12.05(C) is not supported by substantial evidence.

Listing 12.05 defines intellectual disability as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05. As it existed at the time of the hearing before the ALJ, a claimant could demonstrate intellectual disability by satisfying subsection (C) of Listing 12.05, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

function." Id. at § 12.05(C) (2014).[3] Consequently, to meet his burden to show intellectual disability at Step Three, Plaintiff needed to produce evidence demonstrating the following elements: (1) he experienced subaverage intellectual functioning with adaptive functioning deficits before age 22, (2) a full scale IQ or other qualifying score between 60 and 70, and (3) a separate physical or mental impairment posing an additional and significant work-related limitation.

For the first element, the Commissioner argues Plaintiff failed to submit qualifying evidence describing his condition prior to age 22. That may be true in light of what types of evidence the Listing of Impairments explains can satisfy this element. However, the Commissioner has not cited a relevant portion of the ALJ's decision embodying an opinion on this issue, and the court is unable to find any such opinion in the record. This argument therefore exceeds the scope of the court's review. See Garrison, 759 F.3d at 1010.

For the second element, the ALJ apparently dismissed Plaintiff's IQ score of 69 as determined by Dr. Hyatt-Boyd based on "full consideration of the record, including the consultative reports and two impartial medical experts testimony." Tr. at 18. The ALJ found the score was "questionable in accuracy" without "further documentation anywhere else" since Plaintiff was able to graduate from high school and maintain a regular work schedule for several years. Id. Such reasoning, however, does not constitute a clear and convincing reason to reject the uncontradicted IQ test result. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) ("[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician"). Left unexplained is why the result of an IQ test requires additional documentation or examination before it can be accepted, and what exactly in the testimony of Dr. Amusa or Dr. Kivowitz led the ALJ to question the accuracy of the result. See 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(H)(2)(d) ("Only qualified specialists, Federal and State agency medical and psychological consultants, and other contracted medical and psychological experts may conclude that your obtained IQ score(s) is not an accurate reflection of

---

[3] Listing 12.05 has since been revised and no longer includes subsection (C).

Case No.: 5:16-cv-03520-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
8

your general intellectual functioning. This conclusion must be well supported by appropriate clinical and laboratory diagnostic techniques and must be based on relevant evidence in the case record . . . ."). Reviewing the hearing transcript, the court cannot locate testimony from either doctor criticizing or contradicting Dr. Hyatt-Boyd's testing process, its results, or the credibility of Plaintiff's participation.

Similarly, the facts that Plaintiff graduated from high school and maintained a regular work schedule are not clear and convincing reasons to reject the result of an IQ test, at least as presented here. As will be explained in more detail below, the ALJ erred in concluding Plaintiff attained a "high school education" under the regulations, and absent further detail, it is not plainly evident why maintenance of a work schedule is inconsistent with an IQ in the extremely low range.

For the third element, the ALJ did not provide a direct assessment of Plaintiff's separate physical or mental impairments in conjunction with the requirement of Listing 12.05(C). The court observes, however, that this element was effectively satisfied by the ALJ's Step Two finding that Plaintiff had other severe impairments. See 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(A) (2014) ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."). To the extent the ALJ relied on Dr. Kivowitz's opinion that Plaintiff could not meet this element unless he had a separate impairment that also met a listing (Tr. at 48), such reliance was based on legal error.

Because the ALJ's Step Three decision is not supported by substantial evidence and may have constituted legal error in part, this case must be returned to the Commissioner to reconsider whether Plaintiff satisfies Listing 12.05.

## B. The Step Four Decision is Not Supported by Substantial Evidence

### i. Past Relevant Work

At Step Four, the ALJ found that Plaintiff was not disabled because he is capable of performing "past relevant work" as a stock clerk. Plaintiff argues the ALJ's finding that his position as a stock clerk constituted past relevant work is not supported by substantial evidence and inconsistent with the Step One finding that Plaintiff was not engaged in "substantial gainful activity." The court agrees with Plaintiff.

If the record shows the claimant's residual functional capacity ("RFC") permits performance of past relevant work, the Commissioner may find non-disability at Step Four. Under the regulations, "past relevant work" is work a claimant has done in the past 15 years, that was "substantial gainful activity," and that lasted long enough for the claimant to learn how to do the work. 20 C.F.R. § 404.1560(b)(1). Whether a claimant has engaged in "substantial gainful activity," or "SGA," is determined by applying 20 C.F.R § 404.1574 to the subject work. The Commissioner primarily considers the earnings derived from the work and compares the claimant's monthly earnings to amounts calculated under § 404.1574(b)(2)(ii). If the earnings exceed the amount provided by the regulation, the claimant is ordinarily considered to have engaged in substantial gainful activity. 20 C.F.R § 404.1574(b)(2). If they do not, the Commissioner will generally find the claimant has not engaged in substantial gainful activity unless "there is evidence indicating that [the claimant] may be engaging in substantial gainful activity or that [the claimant is] in a position to control when earnings are paid . . . or the amount of wages paid . . . ." 20 C.F.R. §§ 404.1574(b)(3).

Though the record does not reveal a § 404.1574 calculation, the ALJ found at Step One after recounting Plaintiff's earnings history that his job as a stock clerk suggested "very close to, but not quite, SGA criteria." Tr. at 15. At Step Four, the ALJ reiterated that Plaintiff "arguably has not performed SGA in any single year," but then found that "[a]n equals past relevant work determination is inferred." Id. at 21.

The obvious problem with the ALJ's reasoning between Steps One and Four is its

Case No.: 5:16-cv-03520-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
10

inconsistency. Because the definition of "past relevant work" relies partly on such work also constituting "substantial gainful activity," and since the definition of "substantial gainful activity" is common to both steps, the same job cannot fail to meet the definition when applied at Step One, but then qualify as "past relevant work" at Step Four. As it stands, the ALJ's finding at Step Four, presumably based on one of the exceptions described in § 404.1574(b)(3), is not supported by substantial evidence. The Commissioner's arguments in opposition fail to properly account for this deficiency in the record. It must therefore be clarified by the ALJ.

### ii. RFC

Plaintiff argues the RFC applied by the ALJ is not supported by substantial evidence because the ALJ improperly assessed the opinions of Dr. Kivowitz and Dr. Hyatt-Boyd. Since the record does not adequately specify what medical or other evidence the ALJ relied on in designating the mental limitation included in the RFC, the court must concur.

RFC refers to what the claimant "can still do despite existing exertional and nonexertional limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). It describes the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). An ALJ properly determines a claimant's RFC by "considering all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins, 466 F.3d at 883. "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

Here, the record contains two medical opinions relevant to determining whether some form of mental limitation should be included in the RFC applicable to Plaintiff. The first was Dr. Hyatt-Boyd's report which, as recited, stated that Plaintiff had limitations in several areas, but not in the ability to maintain concentration, attention, persistence and pace. Tr. at 604. The second was Dr. Kivowitz's testimony, through which he related that in "the area of concentration,"

Plaintiff should be limited to "simple repetitive tasks." Id. at 46. In her description of Plaintiff's RFC, the ALJ found he could he was "not restricted to simple, repetitive tasks," but had a "'moderate' limitation in concentration." Id. at 19.

The moderate limitation in concentration included in Plaintiff's RFC is not supported by substantial evidence in the record because the basis for it is not explained in the ALJ's written decision or evident from the record. Indeed, the limitation cannot be based on Dr. Hyatt-Boyd's report since she found Plaintiff had no limitation in that area. Nor can it be based on Dr. Kivowitz's testimony, since he opined Plaintiff's impairment in concentration would limit him to simple repetitive tasks - a limitation the ALJ specifically rejected. And to add to the confusion, the ALJ appears to have accepted the opinions of both doctors in their entirety, despite the fact their opinions are partially in conflict. Id. ("The undersigned bases this RFC on the totality of medical opinions in the record . . . .").

In short, and despite the Commissioner's attempt to rationalize the ALJ's fragmented reasoning, the RFC is defective because there is simply no way for the court to understand how the moderate limitation in concentration came about on the current state of the record. For this and the preceding reason, the ALJ's Step Four decision cannot be sustained.

### C. The Step Five Decision is Not Supported By Substantial Evidence

#### i. High School Education

A claimant's educational level is considered at Step Five when determining whether the claimant can perform substantial gainful work in the national economy. 20 C.F.R. § 416.920(g). Plaintiff disputes the ALJ's finding that he completed "at least a high school education" as unsupported by substantial evidence. In opposition, the Government contends the ALJ did not err because Plaintiff testified he graduated from high school. On this record, the ALJ's finding cannot be sustained.

When assessing an application for Social Security benefits, "education is primarily used to mean formal schooling or other training which contributes to [a claimaint's] ability to meet

vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." 20 C.F.R. § 404.1564(a). The numerical grade level a claimant completes may not represent educational abilities, and may be higher or lower depending on other factors, such as past work experience, daily activities, hobbies, or the results of testing. 20 C.F.R § 404.1564(a), (b). However, the numerical grade level may be used to determine a claimant's educational abilities if there is no evidence to contradict it. 20 C.F.R. § 404.1564(b).

"High school education" is defined in the regulations as follows:

> High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 404.1564(b)(4).

Here, it appears the ALJ concluded Plaintiff has a high school education based solely on his testimony he completed "senior year" and graduated from high school. But the record also contains other significant, contrary evidence demonstrating that Plaintiff may not have acquired the level of reasoning, arithmetic and language skills contemplated by the regulation's definition. To that end, Plaintiff testified he completed school through separate special education courses, which he attended "the whole time." Tr. at 51. He also stated he did not take the high school exit exam when he graduated. Id. Moreover, uncontradicted WAIS-IV testing results by Dr. Hyatt-Boyd indicated Plaintiff has an "extremely low" IQ of 69 and scored in the "low average range" in reasoning, comprehension and conception; the "borderline low range" in nonverbal reasoning and perceptual organization; and in the "extremely low range" in attention, concentration, and mental processing speed. Id. at 602. Plaintiff also scored well below average in working memory subtests for digit span and arithmetic, and in processing speed index subtests for symbol search and coding. Id.

The ALJ did not address or follow-up on Plaintiff's testimony concerning participation in special education or the high school exit exam, and therefore made no attempt to dismiss or

Case No.: 5:16-cv-03520-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

13

reconcile that testimony with her educational finding. This was error. See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (finding error where ALJ ignores evidence without explanation).

Additionally, though the WAIS-IV testing results are particularly probative of Plaintiff's educational level as defined under the regulations, the ALJ never directly discussed them in her decision; and if at all, the ALJ dismissed them at Step Three as "questionable in accuracy." Tr. at 18. But for reasons similar to those already stated, the ALJ's articulation is not a clear and convincing reason to reject the testing results. See Lester, 81 F.3d at 830. The ALJ failed to explain why the uncontradicted WAIS-IV testing results require additional documentation to be accepted, particularly when they appear *inconsistent* with a finding that Plaintiff attained a high school education as defined by § 404.1564(b), but *consistent* with other contrary evidence, including Plaintiff's testimony concerning special education.

Since the ALJ did not discuss the considerable evidence that Plaintiff may not have a high school education, she failed to conduct a proper evaluation of the record by perfunctorily relying on the numerical grade level Plaintiff completed. See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (stating that the court reviewing an ALJ's conclusions "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'"). The finding that Plaintiff has a high school education under § 404.1564(b) is therefore not supported by substantial evidence.

### ii. The Error was not Harmless

This court could still affirm the ALJ's Step 5 decision if the error was harmless. Treichler v. Comm'r of Soc. Sec., 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' or 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity.'" Id. (quoting Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012); Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 497 (2004)). The court cannot find on this record that the ALJ's educational finding was inconsequential to the outcome at Step Five, nor can it reasonably discern

the agency's path by putting it aside.

At Step Five, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's [RFC], age, education, and work experience." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). The Commissioner can meet this burden by the testimony of a vocational expert. Id. at 1100-1101. However, hypothetical questions posed to a vocational expert "must be accurate, detailed, and supported by the medical record." Id. at 1101. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Gamer v. Sec'y of Health & Human Servs., 815 F.2d 1275, 1279 (9th Cir. 1987) (internal quotation marks omitted).

In this case, the ALJ prefaced the hypothetical questions by instructing the vocational evaluator to assume an individual "who has the same age, education and experience as our claimant." Tr. at 68. The ALJ did not further specify what level of education should be assumed for Plaintiff, nor was the vocational expert made aware of the WAIS-IV testing results through testimony at the hearing or her review of the record.[4] The only evidence available to the vocational expert was Plaintiff's testimony in response to questions posed by the ALJ and his lawyer, but as explained, those statements do not accurately reflect the extent of available evidence relevant to clarifying Plaintiff's educational level under the regulations. The vocational expert, therefore, rendered an opinion based on an incomplete and potentially unsupported assumption, and her opinion concerning other jobs available to Plaintiff lacks evidentiary value.

The Commissioner suggests any error was harmless because the ALJ identified two other unskilled jobs Plaintiff could perform, industrial cleaner and warehouseman, which carry specific vocational preparation ("SVP") times of 2. An SVP of 2 corresponds to unskilled work, as opposed to SVPs of 3 or 4, which each correspond to work requiring increasing skill. Terry v.

---

[4] The vocational expert reviewed exhibits one through 25E (Tr. at 67), but Dr. Hyatt-Boyd's report is listed in the record as exhibit 4F. This leaves it outside the portion of the record reviewed by the vocational expert prior to testifying.

Case No.: 5:16-cv-03520-EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
15

Sullivan, 903 F.2d 1273, 1276-77 (9th Cir. 1990). In turn, the SVP ratings may dictate the educational attainment necessary to undertake certain jobs, given their classifications as unskilled, semi-skilled or skilled work. 20 C.F.R. § 404.1564(b) (describing levels of education in conjunction with degrees of working skill).

While the court understands the basis for it, the Commissioner's argument is nonetheless problematic because the court is unable to determine Plaintiff's educational level - and the corresponding SVP - on the ambiguous record. Only the ALJ can appropriately evaluate the effect, if any, of the WAIS-IV testing on how Plaintiff's educational attainment should be evaluated under § 404.1564(b). See Treichler, 775 F.3d at 1098 (explaining that the reviewing court leaves it to the ALJ to resolve ambiguities in the record, rather than substituting its discretion for that of the agency). And once that evaluation is appropriately undertaken, only the ALJ can pose the finding to a vocational evaluator.

In sum, the alternative decision at Step Five is not supported by substantial evidence.

## IV. ORDER

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Dkt. No. 16) is GRANTED and the Commissioner's Motion for Summary Judgment (Dkt. No. 19) is DENIED.

The Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings consistent with this order. Judgment will be entered in favor of Plaintiff and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: September 13, 2017

EDWARD J. DAVILA
United States District Judge